IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

DARWIN T. DUNCAN,

    Plaintiff,

v.           CIVIL ACTION NO. 5:12-cv-00235

ICG BECKLEY, LLC.,

    Defendant.[1]

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Defendant's Motion for Summary Judgment* ("Def.'s Mot.") (Document 24). The Court has also reviewed Defendant's *Motion in Limine to Exclude Testimony of Robert Wells* ("Def.'s Mot. in Limine") (Document 29) and *Defendant's Motion For Leave to File Reply to Plaintiff's Response to Motion in Limine to Exclude Testimony of Robert Wells* ("Def.'s Mot. for Leave") (Document 36) as they are relevant to the disposition of Defendant's motion for summary judgment.

Upon consideration of the parties' written submissions as to each motion, the Court finds that the testimony of Plaintiff's expert Robert Wells **should be excluded** based on the expert's lack of knowledge, skill, experience and education of the subject matter involved in this case, that Defendant **is entitled to summary judgment as a matter of law** given that Plaintiff has failed to demonstrate a genuine dispute of material fact that Defendant had "actual knowledge" of a specific unsafe work condition, as that term is considered in deliberate intent actions, and

---

[1] *See infra* n.3.

that Defendant's motion for leave to file a reply in support of its motion in limine should be **denied**.

*I.*

This action arises as a result of an injury suffered by Plaintiff Darwin T. Duncan while working at an underground mine for Defendant ICB Beckley, LLC. On December 4, 2009, Plaintiff began the third shift at the Beckley-Pocahontas Mine where he and his foreman, Jason Cozart, were assigned the task of taking pre-fabricated regulator doors in a hauler to various areas of the No.3 section, a new mine section. Plaintiff and Cozart used Entryway No.6, one of the ten entryways of the No.3 section, to deliver the first door without incident. Thereafter, the two men retrieved the second door from the supply area and traveled underground in Entryway No.6 to deliver the door to the No.10 entry. Plaintiff, driving in the hauler, entered either Entry No.9 or 10. He stopped at the location designated for the drop and began pushing the regulator door off the rear of the hauler with its ram. In doing so, the door struck the side of the wall or "rib" of the mine. The collusion caused the pre-fabricated door to bend. Plaintiff exited the hauler to assist Cozart in straightening the door. As he walked to the rear of the hauler, he looked at the "rib," but did not notice anything out of the ordinary. After fixing and unloading the door, Plaintiff walked between the hauler and the rib back to the hauler's driver seat. As he walked, a rock from the rib broke away and struck Plaintiff in his lower back, hips and legs. As a result, Plaintiff suffered a broken leg that has required five surgeries. He asserts that he is "totally and completely disabled for doing any work for which he is qualified by education or training." (Notice of Removal, Ex. A., Compl.¶ 8.)

On November 29, 2011, Plaintiff initiated this action to assert a deliberate intention claim against Defendant by alleging, among other things, that the area in which he was assigned had

not been "firebossed" or inspected by Cozart, as required by 30 C.F.R. 75.360[2], and that Defendant directed him to work in an area with hazardous conditions. Plaintiff seeks $1,000,000 in lost wages and work-related benefits, $150,000 for loss of his ability to perform household services, and $500,000 for pain and suffering and loss of enjoyment of life. This action was removed to this Court on February 3, 2012.

## II.

On November 19, 2012, Defendant moved for summary judgment arguing that Plaintiff cannot satisfy the requisite elements of a deliberate intent claim, pursuant to W.Va. Code Section 23-4-2. Specifically, Defendant argues that Plaintiff has no evidence that it had prior actual knowledge of a specific unsafe working condition, violated a specific applicable safety regulation or industry safety standard and intentionally exposed Plaintiff to an unsafe working condition. (Memorandum of Law in Support of Defendant's Motion for Summary Judgment

---

[2] Pursuant to the Federal Mine Safety Health Act of 1977, underground coal mines are required to comply with a variety of safety standards. Regulations governing these standards are set forth in Part 75 of Title 30 of the Code of Federal Regulations. In this case, Plaintiff asserts that Defendant failed to conduct a pre-shift examination required by 30 C.F.R.§75.360, titled Preshift Examination at Fixed Intervals, under the Ventilation subpart of the Code. At the time of Plaintiff's injury, this Code required "a certified person designated by the operator" to make "a preshift examination within 3 hours preceding the beginning of any 8-hour interval during which any person is scheduled to work or travel underground." 30 C.F.R.§75.360(a)(1). This examiner is required to "examine for hazardous conditions, test for methane and oxygen deficiency, and determine if the air is moving in its proper direction" in at least ten locations within the mine including:

> Working sections and areas where mechanized mining equipment is being installed or removed, if anyone is scheduled to work on the section or in the area during the oncoming shift. The scope of the examination shall include the working places, approaches to worked-out areas and ventilation controls on these sections and in these areas, and the examination shall include tests of the roof, face and rib conditions on these sections and in these areas.
> . . .
> Other areas where work or travel during the oncoming shift is scheduled prior to the beginning of the preshift examination.

30 C.F.R.§75.360(b)(3). On August 6, 2012, this regulation was amended to expand the preshift examination to include the identification of violations of a number of standards relative to roof control, ventilation, methane; accumulations of combustible materials and application of rock dust, the maintenance of belt conveyor components, guarding moving machine parts and other safeguards involving the maintenance of travelways. Given that the incident in this case occurred on December 5, 2009, the amendment is not relevant to this case.

("Def.'s Mem.") (Document 25) at 8-10.)[3] Plaintiff filed his opposition on November 26, 2012, wherein he relies principally upon the expert report of certified safety engineer, Robert Wells, to satisfy the essential elements of the deliberate intent claim. (Plaintiff's Response to Defendant's Motion for Summary Judgment ("Pl.'s Resp.") (Document 26) at 4-7). In its Reply, on December 10, 2012, Defendant challenges the knowledge of Plaintiff's expert and maintains that Plaintiff has not sufficiently carried his burden to demonstrate evidence to support his deliberate intention claim. (Reply in Further Support of Defendant's Motion for Summary Judgment ("Def.'s Reply") (Document 27) at 3-5).

On January 28, 2013, Defendant moved to exclude the testimony of Plaintiff's expert, Robert Wells, by arguing that he fails to meet any of the requirements for admissible expert testimony under Rule 702 of the Federal Rules of Evidence. (Def.'s Mot. in Limine at 2.) On February 1, 2013, Plaintiff filed an opposition to the motion contending that he has properly proffered an expert opinion that is sufficient under the rules of evidence and that Defendant's dispute is to the credibility of the expert. On February 5, 2013, Defendant filed a reply to support its motion in limine (Document 33). On February 11, 2013, this Court struck this filing from the record on the ground that the governing scheduling order did not allow for the submission and the record revealed that Defendant did not seek leave to file the document. (Order (Document 34) at 1.) Two days later, Defendant filed its Motion for Leave, wherein it sought permission to file its Reply because of its belief that "its Reply brief will be of assistance

---

[3] Defendant also moved for summary judgment by arguing that International Coal Group, Inc., the defendant named in the Plaintiff's complaint, is a member of ICG Beckley, LLC, and as such could not be held liable for the acts or omissions of ICG Beckley, LLC. (Def.'s Mem. at 5-6.) According to Defendant, at the time of Plaintiff's injury, he was employed by ICG Beckley, LLC, not International Coal Group, LLC. Thereafter, Plaintiff moved to amend his complaint to add ICG Beckley, LLC as a party defendant. (Document 28). On January 31, 2013, this Court granted the motion. (Document 31). On March 27, 2013, the parties jointly sought the entry of an agreed order to wholly substitute ICG Beckley, LLC as the defendant. (Agreed Order of Substitution (Document 44) at 1) ("All prior filings and motions made on behalf of International Coal Group, Inc. should be deemed made on behalf of ICG Beckley, LLC.") Inasmuch as this substitution renders International Coal Group, Inc.'s argument relative to member liability moot, the Court will not consider the argument in this opinion.

4

in addressing certain issues raised by Plaintiff's Response." (Def.'s Mot. at 2.) Upon consideration of the parties' submissions relative to the issue of expert testimony, the Court finds no reason to reconsider its Order striking the Defendant's unsolicited reply brief. The Court will solely consider Defendant's motion and the corresponding opposition. Therefore, the Court does hereby **ORDER** that *Defendant's Motion for Leave to File Reply to Plaintiff's Response to Motion in Limine to Exclude Testimony of Robert Wells* (Document 36) be **denied**.

*III.*

The well-established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U .S. 242, 247 (1986). A "material fact" is a fact that might affect the outcome of a party's case. *Anderson*, 477 U.S. at 248; *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the non-moving party's favor. (*Id*.) The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322-23. However, the non-moving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. "At the summary judgment stage, the non-moving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action." *Perry v. Kappos*, No.11-1476, 2012 WL 2130908, at *3 (4th Cir. June 13, 2012) (unpublished decision) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)). Moreover, "[a] party may object that the material cited to

support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed.R.Civ.P. Rule 56(c)(2). If factual issues exist that can only be resolved by a trier of fact because they may reasonably be resolved in favor of either party, summary judgment is inappropriate. *Anderson*, 477 U.S. at 250.

*IV*.

Generally, a West Virginia employer is immune from employee litigation involving workplace injuries if it is covered by the West Virginia Workers' Compensation Act. W. Va. Code § 23-2-6; *see Riffle v. C.J. Hughes Constr. Co.*, 703 S.E.2d 552, 555 n. 2 (W. Va. 2010) However, this state's legislature has carved out certain circumstances by which an employer can lose the immunity provided by the workers' compensation system, "[i]f an injury or death results to an employee from the deliberate intention of his or her employer to produce the injury or death[.]" W. Va. Code § 23-4-2(c). In such a circumstance, "the employee . . . has the privilege to take under [the Workers' Compensation Act] and has a cause of action against the employer . . . for any excess of damages over the amount received or receivable in a claim for [worker's compensation] benefits[.]" (*Id.*) There are two avenues of proof to show an employer acted with deliberate intent. *See* W. Va. Code § 23-4-2(d)(2)(i) and (d)(2)(ii). Relevant to this case, a plaintiff must present evidence to demonstrate each of the following five essential statutory elements to establish a deliberate intention claim:

> (A) that a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;

> (B) that the employer, prior to the injury, had actual knowledge of the existence of the specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by the specific unsafe working condition;

> (C) That the specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of the employer, as demonstrated by competent evidence of written standards or guidelines which reflect a consensus safety standard in the industry or business, which statute, rule, regulation or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;
>
> (D) That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C), inclusive, of this paragraph, the employer nevertheless intentionally thereafter exposed an employee to the specific unsafe working condition; and
>
> (E) That the employee exposed suffered serious compensable injury or compensable death . . . whether a claim for benefits under this chapter is filed or not as a direct and proximate result of the specific unsafe working condition.

W. Va. Code § 23–4–2(d)(2)(ii). As noted above, Defendant moves for summary judgment based on the argument that there is no evidence to support subsections 23-4-2(d)(2)(ii)(B), (C) and (D).

Notwithstanding the same, the Court finds that the primary thrust of Defendant's argument is centered on its challenge to Plaintiff's evidence proffered to demonstrate the second fact, or the "actual knowledge" factor. The Federal Rules of Civil Procedure provide that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed.R.Civ.P.56(c)(2). Consequently, a determination relative to Plaintiff's evidence is necessary before this Court can fully consider Plaintiff's ability to establish a requisite factor of his deliberate intention case. To properly consider the Defendant's arguments relative to its motion in limine to exclude Plaintiff's expert witness testimony, a brief discussion of the "actual knowledge" factor and the parties' arguments on summary judgment is required for context.

7

The actual knowledge requirement of a deliberate intention action is not "satisfied merely by evidence that the employer reasonably should have known of the specific unsafe working condition and of the strong probability of serious injury or death presented by that condition. Instead, it must be shown that the employer actually possessed such knowledge." *Ramey v. Contractor Enter. Inc.*, 693 S.E.2d 789, 794 n.13 (W. Va. 2010) (explaining that the prior version of W. Va. Code § 23-4-2 used the terms "subjective realization" and "appreciation" to describe an employer's awareness of a specific unsafe condition, but that those terms, like the "actual knowledge" term of the current statute, required a certain kind of evidence that has not changed despite the statutory language.) Courts considering deliberate intention claims generally study the type of evidence submitted to demonstrate an employer's "actual knowledge" and have considered several factors: "(1) whether any prior injuries had occurred because of the condition; (2) whether the employer previously had been cited by government officials for the violation; and (3) whether there had been any prior complaints that would have put the employer on notice of the high degree of risk and strong probability of serious injury or death created by the condition." *Baisden v. Alpha & Omega Coal Co., LLC*, Civil Action No.2:11-079, 2012 WL 259949, *9 (S.D. W. Va. Jan. 27, 2012). However, this type of evidence is not mandatory under the statute. *Ryan*, 639 S.E.2d at 765. Yet, this component of the deliberate intention claim has "a high threshold that cannot be successfully met by speculation or conjecture." *Mumaw v. U.S. Silica Co.*, 511 S.E.2d 117, 123 (W. Va. 1998). Instead, this element "requires an interpretation of the employer's state of mind, and must ordinarily be shown by circumstantial evidence, from which conflicting inferences may often reasonably be drawn." *Ryan v. Clonch Indus.*, 639 S.E.2d 756, 765 (W. Va. 2006) (citations omitted.) In *Ryan*, the West Virginia Supreme Court of Appeals determined that "where . . . [an] employer fail[s] to perform a reasonable evaluation

8

to identify hazards in the workplace in violation of a statute, rule or regulation imposing a mandatory duty to perform the same, the performance of which may have readily identified certain workplace hazards, the . . . employer is prohibited from denying that it possessed . . . [actual knowledge] of the hazard asserted in the deliberate intent action." *Ryan*, 639 S.E.2d at 759.

Turning to the case *sub judice*, Defendant contests Plaintiff's allegation that it had actual knowledge of the specific unsafe working condition relative to the rib condition in the area where Plaintiff worked and was injured. Contrary to Plaintiff's assertion that an inspection was not performed in that area prior to Plaintiff's shift, Defendant contends that Warren Shaffer, second shift section foreman, performed a pre-shift inspection between 10:00 p.m. and 10:45 p.m., prior to the beginning of Plaintiff's midnight shift. (*See* Def.'s Mot. Ex. D, Defendant International Coal Groups, Inc.'s Answers and Responses to Plaintiff's First Set of Requests for Admission, First Set of Interrogatories and First Set of Requests for Production (Document 24-4) at 2; PreShift Mine Examiner's Report (Document 24-4) at 5.) According to Defendant, Shaffer, who has been a certified mine foreman since 1997, completed a pre-shift report which noted that he did not observe any hazardous conditions or violations in Entryways 1-4 and 6-10, which encompassed the areas were Plaintiff worked on the morning of December 5, 2009. (Preshift Mine Examiner's Report (Document 24-4) at 5.) As a result of this pre-shift inspection, Defendant argues that it lacked actual knowledge of the specific unsafe working condition of the rib that "rolled" on Plaintiff.

To demonstrate a genuine dispute of material fact, Plaintiff submits the report of its expert, Robert Wells, which challenges whether an adequate or sufficient pre-shift inspection was performed by Shaffer. (*See* Pl.'s Resp. at 4-7; Pl.'s Ex. D. August 20, 2012 Rule 26 Report

9

from Robert Wells to Pl.'s Counsel Richard Neely ("Pl.'s Expert Rpt.") at 28.) According to Plaintiff's expert, the pre-shift inspection could not have been accomplished in "a mere forty-five minutes" given the size of the No.3 section mine and the requirements of any inspection performed pursuant to 30 C.F.R. § 75.360.[4] Plaintiff also asserts, through his expert report, that the fact that the area where Plaintiff was injured was "idle" lends support to his allegation that a pre-shift inspection was not done. As such, Plaintiff argues that Defendant is precluded, as contemplated by *Ryan*, from asserting that it lacked prior knowledge of the specific unsafe working condition when it has not met the federally mandated standard of conducting a pre-shift examination. Further, Plaintiff asserts that Defendant's own accident report "found that the accident might not have happened had there been a proper pre-shift inspection." (Pl.'s Resp. at 7) (citing a statement from Defendant's investigation report which was included in the Wells Report that, "Cozart says the rib showed no sign of stress and gave no warning before it rolled. Even so, it remains possible that a proper work place exam did not take place and it is possible that the rib did indeed show some distress.") Plaintiff argues that the investigation report coupled with his expert's report supports his burden of "placing facts in evidence that would allow a jury to conclude that he was injured because of the Defendant's deliberate intent." (*Id*. at 9.) In its reply to the motion for summary judgment, Defendant maintains that Plaintiff has no evidence to support the deliberate intent claim. Defendant argues that Plaintiff's attempt to satisfy its burden of demonstrating that Defendant had actual knowledge of an unsafe working condition is flawed by his reliance on an erroneous expert legal opinion. (Def.'s Reply) at 3.) Defendant challenges the ability of Mr. Wells to render his opinion on the timing of any pre-shift examination given that he has no practical mining experience and disputes Mr. Wells' interpretation of the 30 C.F.R. § 75.360. Defendant also argues that even if it is assumed that a

---

[4] *See supra* n.2.

pre-shift examination did not occur, Plaintiff has failed to offer evidence that the alleged specific unsafe work condition may have been "readily identified during the course of the examination." Finally, Defendant argues that Plaintiff has failed to offer any evidence that Defendant intentionally and consciously exposed Plaintiff to a known unsafe working condition.

With the foregoing as a backdrop, the Court will now turn its attention to Defendant's motion to exclude Robert Wells' testimony pursuant to Rule 702 of the Federal Rules of Evidence.

    A.  *Motion in Limine to Exclude Testimony of Robert Wells*

In an argument similar in nature to that presented in its Reply, Defendant requests that this Court reject Mr. Wells' testimony because he lacks the knowledge, experience or training to qualify as an expert to render his opinion in this case. Defendant also argues that the expert's opinion is based on erroneous factual assumptions, regulatory misinterpretations, and a misunderstanding of basic mining concepts. Defendant further contends that Mr. Wells has no "identifiable methodology" for his opinion. In opposition, Plaintiff asserts that Mr. Wells has mining experience, he has not offered any "scientific testimony" and that Defendant's challenges amount to attacks on the credibility of its expert, which can be settled before a jury.

Rule 702 of the Federal Rule of Evidence permits a district court to admit the testimony of expert witnesses who are qualified as an expert by knowledge, skill, experience, training or education . . . if

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed.R.Evid.702. In order to qualify as an expert, the Fourth Circuit Court of Appeals has instructed that "[u]nder Rule 702, an expert must have either knowledge, skill, experience, training, or education. These are disjunctive; an expert can qualify to testify on any one of the grounds." *Cooper v. Laboratory Corp. of America Holdings, Inc.*, 150 F.3d 376,380-81 (4th Cir. 1998) (citing *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993)). In consideration of the qualifications of an expert, a court is not considering whether the opinion offered is correct. A court is only concerned here with whether "an expert witness . . . possess[es] some specialized knowledge or skill or education that is not in possession of the jurors." *Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200, 203 (4th Cir.2000) (citation omitted).

Plaintiff's expert in this case offers an opinion that:

> "to a reasonable degree of safety engineering certainty that the Defendant was entirely misinformed when it responded to Plaintiff's discovery that a proper pre-shift examination of the section where Mr. Duncan was injured occurred. To a reasonable degree of certainty, no adequate pre-shift examination was properly conducted and, in accord with the Defendant's own accident investigator's conclusion, such a lack of a proper pre-shift examination was more likely than not the proximate cause of Duncan's injuries."

(Wells Report at 30.) In support of this opinion, Mr. Wells describes the No.3 Section of the mine as "compris[ing] an area that is roughly three football fields long by three football fields wide" and with "active areas" at the "face and the 5, 6, and 7 entries[.]" (*Id*.) According to Mr. Wells, "[a]ll of #3 section could not possibly have been properly fire-bossed in a mere forty-five minutes" in light of the duties outlined for such pre-shift inspections as set forth in 30 C.F.R. 75.360." (*Id*. at 28.) Plaintiff's report included a list of the duties set forth in that regulation as well as the expanded scope of the inspection required by the 2012 amendment to Regulation 75.360 which is immaterial to this case. (*Id*.) Mr. Wells also explained that his opinion was

12

based on the fact that "[i]n virtually all mine operations in [his] experience only the active areas of a section are fire-bossed because it is not anticipated that men will be working in the idle sections"; that "[e]ntry 10 was completely idle and used only for air return, therefore it would not typically have undergone a pre-shift inspection unless management had anticipated that men would be working there and ordered a 'special' inspection in anticipation of Mr. Duncan's work"; but that this "special inspection" is belied by Defendant's own incident investigation report. (*Id*. at 28, 30.)

The Court has considered the parties' arguments relative to the motion in limine and has remained mindful that the role of the court here is that of a "gatekeeper" to ensure that the expert is qualified and that the testimony is useful to the trier of fact, relevant and reliable. In consideration of Plaintiff's expert report and his corresponding curriculum vitae, the Court finds that Plaintiff's expert does not possess the requisite qualification to assert whether a "proper" inspection could have been completed in the forty-five minutes Mr. Shaffer reports to have conducted the inspection.

The Court has reviewed Mr. Wells' disclosed education, experience, certifications and training and finds that he does not possess any experience or education relative to the pre-shift inspection required of 30 C.F.R. § 75.360.  Indeed, Mr. Wells does not have any specific education within the mining industry relative to rib conditions or fire-bossing duties.  (Def.'s Mot. in Limine Ex., September 27, 2012 Deposition of Robert Wells ("Expert Tr.") (Document 29-2) at 30).  Mr. Wells' resume reveals that he has a bachelor's degree in chemistry and a master of science degree in engineering with an emphasis in occupational health and safety engineering/applied ergonomics.  In his deposition, Mr. Wells detailed his limited education of the mining industry as occurring over twenty-six years ago, in 1986, when he took a forty-hour

13

mining class in conjunction with his duties as a graduate assistant at West Virginia University. (Expert Tr. at 11-12.) He affirmed that this mining course was an apprentice type course that concerned only the "safety aspects of going into a coal mine." (*Id.* at 11-12, 14.) At the conclusion of that course, Mr. Wells was never tested or certified in any respect for the mining industry. (*Id.* at 12.) Additionally, Mr. Wells has never taken any courses relative to MSHA regulations or served as a consultant or expert with respect to pre-shift examination matters. (*Id.* at 14.) Mr. Wells' list of continuing education courses does not include any mine industry related subjects. He readily admits that in his current employment, a position he has maintained since 1990, he does not frequent underground mines. (*Id.* at 13). In consideration of the foregoing, the Court finds that Mr. Wells' dated general education or training relative to the mining industry is insufficient to qualify him as an expert on matters relative to the requirements of pre-shift inspections, fire-bossing duties or the time period for, and length of, such an examination.

Consideration of Mr. Wells' experience is equally futile. Mr. Wells is not now, nor has he ever been, a miner. His sole experience in a mine, again, occurred when he was a graduate assistant in 1988-1990, when he "spent extensive time in coal mining environments in West Virginia, Pennsylvania, Maryland and Kentucky" primarily testing the "air quality" or the characterization of the mine dust. (*Id.* at 11.) According to Mr. Wells, during this time he "caught a good bit of different activities while underground" including "observ[ing]" others perform inspections and check for "adequate rock dusting for ventilation." (*Id.* at 12-13). Aside from watching others in 1990, Mr. Wells has no experience with mine inspections. Relative to his knowledge and skills, he has testified that he is not a geologist and has never performed any analysis or calculations of rock pressures or stresses involved with rib conditions of a mine. (*Id.*

at 36, 65). In an effort to support his opinion about why he believes forty-five minutes is not enough time to conduct a pre-shift inspection, Mr. Wells testified to his experience in conducting air quality tests. (*Id.* at 55) (discussing his use of cross sectional gird calculations). However, he admits that he does not know how MSHA or state inspectors measure air flow in mines but for his observations over twenty years ago. (*Id.* at 57-58.) Additionally, Mr. Wells testified that while he has extensive ventilation work experience, he has not done such work in a coal mine setting. (*Id.* at 54.) In essence, Mr. Wells' experience, knowledge and skill relative to the mining industry, an industry that has varying safety standards, is limited to his observations of the acts of other persons nearly three decades ago. The Court is mindful that Mr. Wells' purpose within the underground mine during the late 80's did not concern mine inspections, but rather air quality and mine dust.

     In sum, Plaintiff has failed to proffer any evidence that Mr. Wells has specialized knowledge or skill to qualify as an expert opining on what is required in pre-shift examinations or the length of time for such an exam. He is not qualified to opine on the techniques or methods of tests used to reveal hazardous working conditions relative to a mine rib, how such conditions could have been identified in this mine, the risk of injury of such a condition, or why a pre-shift examination could not have been accomplished in forty-five minutes. He does not possess the education or experience to offer an opinion about whether Shaffer's inspection was improper or inadequate. He has simply stated that he believes a pre-shift inspection could not happen in the asserted time period based on the size of the mine and the areas that were not idle. Given that nothing in this record indicates that Mr. Wells has specialized knowledge and skill, this Court cannot find that his opinion will be helpful to a trier of fact to understand the evidence or

determine a fact in issue. Therefore, the Court finds that Defendant's Motion in Limine should be **granted**.

### B. *Motion for Summary Judgment*

As the Court stated above, Defendant's first challenge to Plaintiff's claim is that there is no evidence that it had actual knowledge of the specific unsafe condition. In an effort to prove that Defendant had such knowledge, Plaintiff relied upon his expert's opinion that Defendant had a duty to perform the pre-shift inspection and that the asserted pre-shift inspection did not occur as Defendant contends. Plaintiff's theory is that Defendant's inspection was so insufficient that it could not have happened, leading to the result established in *Ryan*, which would preclude Defendant from asserting that it lacked actual knowledge of the existence of the specific unsafe working condition and of the high degree of risk and strong probability of serious injury presented by that specific unsafe working condition. The Court has found above that Plaintiff has not sufficiently demonstrated that his expert is qualified to give that opinion and, as a result, this evidence is not relevant to establish this element.

Therefore, Plaintiff's argument in support of a genuine dispute of material fact is limited to its argument that Defendant's own investigation report suggested that a proper pre-shift exam was not performed. This argument comes from a statement within Plaintiff's expert's report which is not admissible evidence. Plaintiff has not proffered Defendant's investigation report as evidence, proffered any other evidence from the investigator to explain the *possibility* or its meaning described in this statement, nor offered any evidence to demonstrate the investigator's qualification to opine that Defendant's exam possibly was not proper. Further, even if the investigator's statement was admissible evidence, the statement, alone, would be insufficient to provide Plaintiff with adequate evidence to establish the basis for the preclusive effect of *Ryan*.

Therefore, given the lack of evidence to support Plaintiff's argument, the Court finds that Plaintiff has failed to demonstrate any genuine dispute of a material fact to challenge Defendant's inspection.

The Court has considered the parties' submissions and proffered evidence and finds that there is no evidence that Defendant had actual knowledge of the existence of the specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by the specific unsafe working condition as required by W. Va. Code § 23-4-2. Consequently, even if this Court assumes, without finding, that Plaintiff could sufficiently carry his burden with respect to the rest of the deliberate intention factors, upon consideration of the Court's finding relative to this factor, the Court finds that Plaintiff's deliberate intention claim is fatally flawed. Therefore, the Court finds that Defendant is entitled to summary judgment as a matter of law.[5]

*V.*

After careful consideration of the foregoing the Court finds that Plaintiff's expert lacks the requisite knowledge, skill, experience, training and education to offer expert testimony to assist the trier of fact. The Court also finds that Plaintiff has failed to offer evidence that the Defendant had actual knowledge of the existence of the specific unsafe working condition and the high degree of risk of injury presented by that unsafe working condition. Therefore, inasmuch as the Court finds that there is no genuine dispute as to any material fact establishing an essential element of Plaintiff's claim, the Court does hereby **ORDER** that *Defendant's*

---

[5] The disposition of this action is appropriate given the legislative intent supporting W. Va. Code § 23–4–2. In Section 23–4–2(d)(2)(iii), the West Virginia legislative required "prompt judicial resolution" when a court concluded "that one or more of the facts required to be prove[n] by the provisions of subparagraphs (A) through (E) . . . do not exist." W. Va. Code § 23–4–2(d)(2)(iii)(B); *see also Mumaw*, 511 S.E.2d at 121–22 (granting employer's summary judgment motion in a deliberate intention action where the nonmoving party failed to establish an essential element of the claim).

17

*Motion for Summary Judgment* (Document 24) be **GRANTED.** The Court also **ORDERS** that Defendant's *Motion in Limine to Exclude Testimony of Robert Wells* (Document 29) be **GRANTED** and that *Defendant's Motion For Leave to File Reply to Plaintiff's Response to Motion in Limine to Exclude Testimony of Robert Wells* (Document 36) be **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: April 2, 2013

_____
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA